to streamline here. If I understand correctly, you, at least on behalf of Mr. McGrogan, and that this position has been joined, I believe, by the other parties, contend, acknowledge that the Birdman decision appears to foreclose your exclusive jurisdiction argument. And if that's correct, what is left in these appeals? I know something is left, but I just want to determine what. Well, Your Honor, we concede for purposes of today that the Birdman decision forecloses our 16-12 argument. However, we want to reserve that issue for a possible I understand. But putting that aside, it does not properly dispose of the case because, one, against the Virgin Islands Bureau of Internal Revenue, we have a refund suit which the District Court clearly has jurisdiction over. But insofar as the IRS is concerned, we've asserted that the statutory notice of deficiency purportedly issued by the IRS sounding deficiencies in Code Sections 932 and 934 are, in fact, what the District Court can construe as a Virgin Islands notice of deficiency because what the IRS But it's a federal form, isn't it? Not exactly, Your Honor. This case law is clear that a statutory notice of deficiency doesn't have to be on any particular form. It doesn't have to say anything in particular. It just has to assert the taxpayer, the tax year, and give the taxpayer some I understand you want it to be a V.I.B.I.R. deficiency notice because that would arguably or probably get you jurisdiction in the V.I. District Court. But what is it about the notice itself, the notice in say, that somehow infuses in it the stuff of a Virgin Islands Bureau notice as opposed to the federal notice that at least facially it purports to be? Well, Your Honor, it's because the federal government is asserting deficiencies in Code Sections 932 and 934. And let me be clear, the paradigm that we have here today is because the IRS views the taxes paid to the Virgin Islands not as some type of federal tax, but as a territorial tax. And that, in general, that's what the cases stand for. But those cases didn't really drill down to this nub, this issue. And I would submit to this Court that 932 and the taxes that a taxpayer pays to the Virgin Islands under 932, and the tax credits under 934 that the Virgin Islands administers under 934, those are federal taxes, but they are administratively payable to the Virgin Islands. So basically there's just one tax. And the issue is, is it paid to the IRS or is it paid to the V.I.B.I.R.? Exactly. It's a federal tax. It is a federal tax. And if I could turn the Court's attention to 932. And the notice sought payment of federal tax liability, did it not? Yes, it does. But under 932, since there is one tax, the Virgin Islands gets its share of the tax under 932B on Virgin Islands sourced income and income effectively connected with a Virgin Islands trade or business. Under 932C, it gets the tax, irrespective of source, on bona fide Virgin Islands residents. And under 932B, the federal tax is allocated between the Virgin Islands and the IRS. The IRS has issued a form, Form 8689, and that form allocates the federal tax between the Virgin Islands and the IRS. Let me ask you a question. A bona fide Virgin Islands resident who has no business development activities, simply a resident of the Virgin Islands, earns income during the year and pays tax on it. Now, would the tax they pay to the V.I.B.I.R. be the same amount that they would pay in tax if they were a resident of the continental United States? Yes, with the notable exception is if the Virgin Islands government has authorized and given the taxpayer the ability to claim a tax credit under 934 of the Code. For their business development? Exactly. But for the 934 tax, the tax is exactly the same, which goes back to this Court's equality principle. The tax in the Virgin Islands is exactly the same as what it would be in Florida, in Pennsylvania. There is no difference under the Internal Revenue Code. It's been a while since I read your brief, but my recollection of reading it is that you made much of some deposition testimony of some V.I.B.I.R. officials concerning the agreement or agreements between the IRS and the V.I.B.I.R. and its working relationship. Is my memory correct?  I didn't understand at the time and still am not clear on just what the probative value of that working relationship and your discussion of it was, because I think you made much of it, if I recall, in your brief, at least in terms of length. Yes, I did, Your Honor. And the point I was trying to make, perhaps not clearly enough, is that what the Virgin Islands has done with the IRS has sat on its rights, let the IRS, with the help of the Virgin Islands, audit these taxpayers, and that the Virgin Islands knew that the IRS took the position that the statute of limitations did not begin to run, but only for those individuals that made more than $75,000, notwithstanding that this is a clear equal protection violation. And these taxpayers, if I recall, received the notice of deficiency from the service after the statute of limitations has run on the V.I. law? Under 6511, exactly, Your Honor. And the point being is that these taxpayers faced a factual impossibility, a factual impossibility. The good faith basis for filing an amended income tax return did not arise until the time that the statutory notice of deficiency was issued by the IRS that said that these taxpayers weren't bona fide residents and should not have claimed a 934 tax credit. And because it's a factual impossibility, this makes this case so very different from the other cases that are cited and discussed in the brief. On one hand, you have a host of cases that say it's one thing for the government to mistakenly, improperly, erroneously collect a tax, and when that happens, that's not a basis to open up the statute of limitations. However, on the other hand, you have a few Supreme Court cases that stand for the proposition that the government cannot act in a fraudulent manner in respect to its citizens. And for that, I would turn the Court's attention to Heckler v. Community Health Services. That's found at 467 U.S. 51. That's a 1984 case, and Justin Stevens authored the opinion. And the fact that that case involved a Medicare provider, and that Medicare provider improperly received extra funds from the federal government through the Medicare services, relying upon an agent of the federal government. The federal government tried to recoup the funds. An equitable estoppel argument was made, and the holding of that case was the government was not estopped from recovering improperly paid funds. But here's some key language that this Court needs to be cognizant of, and I'm quoting here. It is for this reason that is well settled that the government may not be estopped on the same terms as any other litigant. Petitioner urges us to expand this principle into a flat rule that estoppel may not in any circumstance run against the government. We have left open that issue in the past, and do so again today. Although the arguments the government advances for this rule are substantial, we hesitate, when it is unnecessary to decide this case, to say that there are no cases in which the public interest in ensuring that the government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with the government. So are you saying that 1984 case supports your equitable estoppel argument? It supports my equitable tolling of the statute of limitations. Equitable tolling. But Brock Camp was decided in 1998. Yes, it was. How do you get around Brock Camp? Doesn't it clearly say equitable tolling doesn't apply? It does, but the facts of that case involved senility and alcoholism on the part of the taxpayer. There was no fault on the part of the taxpayer. Did the court say that equitable tolling doesn't apply under the specific circumstances of that case, or did it say equitable tolling doesn't apply in this category of cases? I believe, well, I would submit that the discussion of Brock Camp addressed the rather specific statutory scheme under 6511, and that it said it did not leave open the possibility for equitable tolling. And, in fact, we have specific enunciated mitigation provisions that do explain when there's an escape hatch for the taxpayer, correct? That is true. But, unfortunately, the discussion I had with the district court below really involved one issue, is whether double inclusion of income between the Virgin Islands BIR and the IRS falls within the scope of 1312 subsection 1. The district court held that it did not, stating that the taxpayers are trying to fashion a remedy out of entirely new cloth. We would submit that we are not seeking that remedy out of entirely new cloth. Congress has given the courts, in certain circumstances, the cloth to fashion and tailor it to the circumstances of the cases the case may need. In this case, when you have two governments working together, and then you have a factual impossibility, the case should allow the statute of limitations to be mitigated. I see that I'm out of time. Let me ask you a question, if I may. There's a mention that there's an attempt between the government of the Virgin Islands and the Internal Revenue Service to take these cases where there's a conflict and work them out. Is there such a structure available, or is it working? I would say there is a structure available. That's under the Tax Implementation Agreement. I would say that that is not working. It is evidenced by the government of the Virgin Islands intervening in the Appleton case, which then went up on appeal, and Judge Rendell issued the opinion in that non-presidential case. But the government of the Virgin Islands has intervened, in particular, in all these taxpayers that I represent today, before the tax court, and in Mr. McHenry's case, the Fourth Circuit, affirmed the tax court held that the government of the Virgin Islands cannot intervene and does not have a say in the matter. So, unfortunately, it doesn't seem that the tax implementation, nor the cooperation between the two respective governments, is in fact working. So, is there any remedy to avoid the double payment of taxation? Unfortunately, Your Honor, not that I can tell. The only way that I can foresee any remedy for these aggrieved taxpayers is to get the money back from the Virgin Islands so that in the event that the IRS is ultimately successful in its contentions, we can take that money and pay it to the IRS. Other than that, unfortunately, I think these taxpayers are going to be subject to double taxation and double inclusion of income. Thank you. We'll have you back on rebuttal, Mr. Juricza. Ms. Archer. Good morning. May it please the Court, my name is Tamika Archer on behalf of the Virgin Islands Bureau of Internal Revenue. Appellant makes three arguments in support of enlargement of the 6511 statute of limitations. First, appellant argues that mitigation is appropriate under the Mirror Code, that the statute can be reopened through the doctrine of equitable recoupment and or equitable tolling. I will address each of these positions in turn. Mitigation under 1311 through 1314 of the Mirror Code cannot be addressed without first noting... Excuse me. Could you talk a little slower? Mitigation under Sections 1311 through 1314 of the Code cannot be addressed without first noting that the purpose of mitigation is not to provide a means to correct all mistakes or inconsistencies that arise after the statute of limitations expires. And indeed, when the mitigation's provisions do apply, they are applied parsimoniously and in a defined, narrow set of circumstances that are enumerated in the Code. The issue here is straightforward. If appellant meets the three threshold requirements for invoking mediation, tax years 2002 through 2004 may be reopened. But if he does not, tax years 2002 through 2004 may not be reopened, and his refund claim against the Virgin Islands Bureau is untimely. This circuit in a state of capital has identified the three conditions of the mitigation provisions that must be met. The first prong is that there must be a determination issued by VBIR, the Virgin Islands Bureau of Internal Revenue. This condition has been met because VBIR issued a notice of disallowance of the refund claim for tax years 2002 through 2004. The second prong is that there must be present one of the seven circumstances of adjustment referenced in the Code. Here, the appellant states that the circumstance of adjustment that is applicable is a double inclusion of an item in income. Okay, let me, you are saying in these cases that the VBIR has said that the taxpayer is not eligible for the business development refund, business development deduction, is that correct? What we've said is the taxpayer filed amended claim for refunds after the expiration of the 6511 statute. The taxpayer filed a what? Amended claims for refund after the expiration of the 6511. Right, but I'm talking in the original tax. Is the VBIR saying that there is a deficiency in what the taxpayer paid to the Virgin Islands originally? No, we did not. What we did is we disallowed the tax. You accepted them as legitimate Virgin Island residents? That is correct. And now the Internal Revenue Service is saying they're not legitimate Virgin Island residents. Correct, and the taxpayer in this case is not. So how can we coordinate a determination on Virgin Island residency between the IRS and the Virgin Islands that is binding on both? I mean, there is a conflict of interest, right? Because the Virgin Islands wants the money and the IRS wants the money. Your Honor, there is not a conflict of interest on the Virgin Island side. Well, between the two of you, because you want the money and they want the money. So in determining, I'm not saying you are violating any situation, but between you and the IRS, you both want to claim, you want to claim the taxpayers as Virgin Island residents, the IRS wants to say they aren't Virgin Island residents. So the two of you, there is a conflict between the two of you in resolving this issue. How can this issue be resolved so that it is not going to impact deleteriously on the taxpayers? Do you have any suggestions? Well, first, Your Honor, I must note that the taxpayer has filed a petition for redetermination in the U.S. Tax Court, and the tax court will determine whether, will determine the IRS notice of deficiency and whether the taxpayer was a U.S. resident for the time period in question. All right, but to Judge Ross' point, suppose that court says that they weren't qualified, they weren't bona fide Virgin Islands residents and the money is owed to the IRS. What assurances can you give us? How can we know that the taxpayers aren't going to have to pay double tax? Your Honor, what the U.S. government and the Virgin Islands government has done is they have entered a tax implementation agreement that has the force of a treaty, and they have agreed to coordinate taxes, and they have adopted a form of mitigation in those provisions in Article 6. Okay, so how will that help these taxpayers? You're suggesting by implication that the taxpayer might be some kind of third-party beneficiary of your agreement, but to be that, there must be something in the way of a remedy available to them. There is, Your Honor. You can't simply ask the taxpayer to rely upon the good faith of either the Bureau or the service to somehow reach an agreement between them that affects this third-party taxpayer. So how will that work? Well, Your Honor, that's exactly what happens on a regular basis. In these circumstances, the U.S. Competent Authority and the VA Competent Authority meet to address issues which occur when the respective agencies are taking inconsistent positions with respect to a taxpayer's residency. Have they considered these cases? As far as I am aware, this particular taxpayer has not availed himself of these procedures. So what assurance can you offer? And I will expect, of course, that Ms. Rubin, on behalf of the Commissioner, will answer this as well. What assurance can you offer to the taxpayers that they will not be double-taxed, so to speak, here? Your Honor, as you are aware, our tax laws are focused on preventing double taxation, and through the tax implementation and the revenue procedure, that's the aim of it. Additionally, under 932 of the Code... Well, now, you say the taxpayer here has not applied for relief. Not that I'm aware of, Your Honor. Can they apply? Yes, Your Honor. All right. And if they apply, then will there be a resolution of this issue between the IRS and the Virgin Islands? When a taxpayer applies under the tax implementation agreement in Article VI,  and if I can make one point, under 932, if there's a determination that the taxpayer was not a Virgin Islands resident and was a U.S. resident under 932A and, however, had income that was sourced in the Virgin Islands, that specific section permits the allocation of that income to the Virgin Islands and to the U.S., respectively. And permits a credit against the U.S. tax liability. This is something that happens on quite an ordinary and normal basis. Now, there is mention, however, I believe, in the reply brief of one of these taxpayers that they have made such application and nothing's happened. Without getting into taxpayer information, Your Honor, I know that the appellant mentioned other taxpayers that I'm not addressing here because this issue that I'm addressing relates to McGrogan, through which there was a final determination as to VBRA in the district court. But I can say that VBRA and the IRS meet consistently and actively and on a daily basis and to close an agreement under the competent authority procedure. So this is happening. I know the appellant makes statements. These statements are not supported by any evidence. They are the appellant's opinions. I submit, Your Honor. So if the appellant applied today for a resolution, would you claim that they're applying too late or would there be a meeting of the two bodies to provide a resolution of this issue in these cases before us? Hypothetically, Your Honor, because what we have, there is no conflict in this case currently. There's no double taxation because the U.S. Tax Court, where this case is now pending, the petition for redetermination, has not made a final determination saying anything, saying whether the taxpayer is a U.S. resident or not. But when the tax court makes that ruling, if the tax court decides that the taxpayer is a U.S. resident, there are procedures in place, the tax implementation agreement, the competent authority process, and other procedures and working arrangements and what have you between the IRS and VBIR that allows accrediting of any taxes that were paid to VBIR to permit those taxes to be credited against the taxpayer's tax liability. The purpose of all of these things is to prevent double taxation to the taxpayer. Are you saying, then, that this step of applying has to come after the tax court makes its determination in these cases? Well, Your Honor, I submit that there has to be an issue. And presently, there is no issue because there is no double taxation. Although the IRS has issued a notice of deficiency, that's not... I somehow suspect that for the taxpayers, hearing that there is no issue, despite the fact that they have received notices of deficiency, is small comfort. Well... Wouldn't it be for you? Well, I submit that because the taxpayer took another step. And what he did is he filed a petition for redetermination of the tax court, which stays the assessment. It stays the assessment until the U.S. tax court makes a final determination with respect to that assessment. Do I recall, though, that the taxpayer actually moved to dismiss his own proceeding in the tax court? I don't recall. I am... How about your colleague on the other side can enlighten me on that? Thank you, Your Honor. I know I'm... I think I have a few minutes. All right. Thank you. Can I proceed? Thank you very much, Counsel. We'll hear from Ms. Rubin. Ms. Rubin, please forgive me, but I want to start with a question before you make your argument. Assume for a minute that the taxpayers here are merely concerned with double taxation. That is to say, because there's a good amount of that in their brief, right? They're getting whipsawed here, and it's not fair that they have to pay a lot of money to both taxing entities. Let's assume they're willing to give up on the notion that they're Virgin Islands residents. They just want to avoid getting hit twice for the same tax. Is there something that you can do in coordination with your colleague from the Virgin Islands to make that happen? Absolutely, and the record makes that clear. If you look at the Cooper Joint Appendix, pages 270 and 312, these are the notices of deficiency that were sent to the Coopers. It offers to go to competent authority if there was an agreement as to the amount due, which presumably there might be if there was an agreement on residency, because what you're talking about is the question as to if it was clear what amount was due and they just wanted to avoid double taxation, what could happen? That tells you you go to competent authority at that point. Now, Judge Smith mentioned the fact that there was a claim that there was a competent authority request made by one of the taxpayers, or actually two of the taxpayers, and that nothing happened. That specific was, again, the Coopers. That's going to be at CJA 435. That's the Cooper Joint Appendix. In that one, they say, well, we assume that there's no debate over how much taxes are due, and we just think there's a debate here as to who should be paid. Ultimately, there is a debate as to how much is due, because if they're not Virgin Islands residents and they're not eligible for the EDP benefits, the Economic Development Program benefits. So the bottom line, then, is if they want to keep fighting for what they perceive to be lower taxation associated with Virgin Islands residency, then they have to suffer the consequences of the fight, which means they're out of time in the Virgin Islands, and if they want to get relief in the U.S., then they have to do what everyone else does, namely pay the tax and then try to get it back. In the tax court. In the tax court, right. But with one exception, I mean, I think if you look at what the Coopers did again, they're a perfect example. They filed protective refund claims before they received any notice of deficiency from the Internal Revenue Service. They filed protective refund claims with the BIR. That's the Cooper Joint Appendix at 364 to 77 and 429 to 39. Now, ultimately, those were, as I understand it, timely, and that was certainly an option that was available to each and every one of these taxpayers. As of 2004, the IRS had announced that we were going to be investigating whether there were EDP participants who were not Virgin Islands residents or otherwise improperly claimed EDP benefits, and this puts the world on notice that if you're sitting there and you're concerned about the possibility of double taxation and you want to maintain your refund rights, there's a way of doing it to protect a refund claim. Now, getting back to the issues dealing with sovereign immunity, if I might, regardless of what the theory is behind the taxpayers' suit against the commissioner, who is a United States official, they are obligated to identify a federal statute that expressly and unequivocally waives sovereign immunity for that suit, and the taxpayers have not done so. They've offered a lot of theories as to why they think this suit should be able to go forward, but the only federal statute that they identified that they thought might permit them to go forward was 48 U.S.C. Section 1612A, and as was discussed during the opening argument, the Bergman 2 case forecloses that argument as the taxpayers have acknowledged in this argument and in their briefs. So what that means is regardless of what their theory is, whether their theory is that for federal taxes or territorial taxes, they can't sue the commissioner because they cannot identify a waiver of sovereign immunity that covers. Turning to the question then as to whether these are federal or territorial taxes at issue here. Well, it's a federal tax. It's not a territorial tax. It's one tax, right? Actually, I think that's not correct. I'm going to point you to a few different sources that I think support our argument here. Internal Revenue Code Section 932, which was enacted by the Tax Reform Act of 1986, and then a few items that explain what was happening with Section 932. That's this Court's Danbury decision. That's Senate Report 99-313, pages 475 to 85. Senate Report 100-445, page 315. And then Treasury Regulations Section 1.932G. And what these explain is that there was a decision made in 1986 based upon a corporation's attempt to avoid pretty much all taxes using geographical definitions and the inhabitant rule that used to apply in the Virgin Islands. Now, Danbury explains that you had two different codes producing two different types of taxes. You had the literal code, the United States Internal Revenue Code that's administered by the IRS producing federal tax liability. You had the mirror code producing territorial liability that's collected by the VIVIR. And under the inhabitant rule, you paid everything to the VIVIR. However, when these corporations started attempting these actions, specifically the Danbury Corporation, Congress acted to try and make sure that this wouldn't happen again. They vitiated the inhabitant rule and specifically stated at page 483 of Senate Report 99-313 that what this meant was that even if you were a VI inhabitant, which is the same thing as a bona fide resident or permanent resident of the VI, you were fully subject to U.S. tax. And we know that they meant U.S. tax compared to territorial tax because the page before, they explain how 932 was funded. But the only tax they were subject to in the first place was the U.S. federal income tax. That is not correct, Your Honor, if I may, as was explained in Danbury. There was a territorial tax under the mirror code, and that covered VI income. Then there was a federal tax subject to the Internal Revenue Code, or as this Court referred to it, the literal code. Now, what Congress did, and they explain this very clearly on page 482 of Senate Report 99-313, is they created two different structures. If you're not a bona fide Virgin Islands resident, you pay the United States federal tax liability on all of your income, including your Virgin Islands income. You pay the fraction of it that reflects your Virgin Islands income to the VIBIR to satisfy your mirror code obligations. You don't calculate a mirror code obligation. You just do it based on that percentage. The rest goes to the IRS as federal taxes. And Congress referred to this as U.S. tax liability. On the flip side, under 932C, if you are a bona fide resident, then what you do is you calculate your mirror code liability, your territorial tax liability. And if you are a bona fide resident and you fully report and pay your income taxes, then you are released from your federal tax obligations. That's Section 932C-4. But as Senate Report 100-445 at 315 makes very clear, if you don't satisfy all three of those requirements, then you still are subject to your U.S. tax obligations. I see my time is up, but I'm not sure you had any chance to ask me questions on that. I think we're satisfied at this point. Thank you very much, Ms. Rubin. And Mr. DeRusso? Well, no, I'm sorry. We've changed our minds. We've changed our minds. That's a judge's prerogative. That's right. There are claims that there are going to be double taxation here. Are you claiming this is not double taxation? At this point, I don't believe there's any sign that there would be double taxation. The IRS has indicated its willingness to participate in competent authority once it is determined how much taxes are owed. Obviously, if a particular taxpayer wins on their challenge, if they prove that they're bona fide Virgin Islands residents and they prove that the income in question was Virgin Islands income, there won't be any double taxation because there won't be any residual U.S. tax liability. But if instead there is determined that, yes, there is U.S. tax liability here because these were not Virgin Islands residents or their income was not Virgin Islands income and therefore not subject to the ADP benefits, then we've indicated as shown in the record sites I gave you for the Cooper notices of deficiency that we're willing to go into competent authority at that point to determine which tax authorities should be getting the money. And how does the taxpayer know that participating in competent authority is a guarantee that the taxpayer doesn't get hit with double taxation? I mean, what's the remedy if something goes wrong? It just sounds a little like bureaucrats speak to me, frankly. I don't understand the details of what it means to participate in competent authority. I assume what that means is the two agencies get together in a room, they work it out, they figure out what is owed to whom and they do it. That's essentially the question I ask Ms. Archer. What is the remedy here? There's an agreement between two taxing authorities, but that's small comfort to the taxpayer if the taxpayer can't be essentially a third-party beneficiary here who has some recourse against the two parties to the agreement. I'm not entirely certain what the remedy would be in a situation where someone, unlike the Coopers, failed to do a protective refund claim, failed to take that step to protect their right to go and get money back from the Virgin Islands BIR if, in fact, it is determined that they should have instead paid all of their taxes to... So we may have two types of results here, those who protected themselves and those who didn't. That's what you're suggesting? It's possible. I honestly don't know. I don't think there's been any cases that have come out of competent authority where someone felt like they had been subject to double taxation and were looking for a remedy and couldn't find one. I have not seen any in doing all of my searches on all of these cases that I'm working on. But ultimately, I think what the Coopers demonstrate is that there were ways to protect yourself if you wanted to make sure that you were safe in the event that the IRS did issue a notice of deficiency. Because if the competent authority process doesn't work out to their satisfaction, they still have a judicial remedy. That's what it appears to me, at least. Okay. All right. Thank you. Mr. Duras, rebuttal, and this time we mean it. Thank you, Your Honor. Let me address the Virgin Islands. First, the Virgin Islands talks about this court's case in the capital decision. Judge Gibbons was expressed in that opinion that the purpose of the statutory mitigation is to prevent active exploitation of the statutes of limitations. Your Honor, I submit that that's what we have here. We have the Virgin Islands and the IRS working together, and then when the IRS gets around issuing a statutory notice of deficiency to these taxpayers in late 2009 and 2010 for tax years to go back as far as 2001, at that point, the Virgin Islands says, you can't get back your money, and ultimately, the joke's on you. You moved down here to take advantage of the 934 tax credit. You moved down here and were induced to participate in the Virgin Islands Economic Development Program, and then when things go awry with the IRS, you can't get back your money. But how can you say this is so unanticipated when the Coopers protected themselves? Your Honor, Rev. Proc. 2006-23 sets up that protective mechanism, and that was issued on May 15, 2006. At that point, the ability to file an amended or protective income tax return for calendar years 2001 and 2002 had already closed. So for taxpayers like Mr. McHenry, his ability to seek that relief was already foreclosed. For Mr. Grogan, his 2008 tax year was already closed. Moreover, the point I make at page 17 of my reply brief is that for the Coopers and for Mr. McHenry, these competent authority requests have been sitting around since 2006 and 2007. They've gone into a black hole. What are you really concerned about here? I mean, are you willing to relent on the argument that your clients were bona fide Virgin Islands residents? Because you make what appears to be a pretty sympathetic argument, at least on the equities, when you argue about whipsaw and the threat of double taxation. But what I'm hearing from the ladies on the other side is that there's no real fear of double taxation. I mean, there seems to be a way for you to prevent double taxation here. What am I missing? Here's what you're missing, Your Honor. For example, in the Cooper case, Joint Appendix 270, the cover letter to the Statutory Notice of Deficiency says that if you want to take advantage of the tax implementation agreement in Ref Proc 2006-23, let us know within 30 days. In other words, you must fully capitulate. But they just made a representation in open court here, which is recorded, that you're going to competent authority. Once you resolve how much is owed, you're going to competent authority. Well, Your Honor, I would submit that that wasn't exactly what I heard. But even if that is the case, and that's what the government's representation is that can bind the IRS going forward, the problem that we have for all these taxpayers is the IRS makes the offer. We'll let you have money and give you credit for money paid to the Virgin Islands. But don't contest residency. Don't contest statute of limitations. Don't contest anything under 932 or 934. Fully concede your case, and then we'll allow you to go to competent authority and maybe get back some of the money that you paid us. Or if you want to continue to fight your case, then you're going to have to pay the taxes to the United States and sue in the tax court. I will concede that's harsh for all taxpayers, but those are the rules of the game, right? You've got to pay the money and then sue to get it back in the tax court. That's the way the process works. Technically, if you pay the money, you can assume the District Court or the Court of Claims, you can contest before paying the tax. I'm sorry, I had it backwards, right. Your clients can pay, you know, I guess you're going to tell me they don't have the money. But there are a lot of taxpayers who don't have the money, and if they don't have the money, then they can't pay it into the system and try to get it back. Isn't that the statutory scheme Congress has set up? Your Honor, I would submit that the statutory scheme was not intended to allow the IRS in 2010 to issue statutory notices as far back as 2001 and allowed the interest, the penalties and interest to accrue for close to a decade. Congress did not intend for that kind of whipsaw, and then at the same time... That may be poor administration of government, but what law, what case or what statute says that it's illegal? Your Honor, I would have to point to just the statutory scheme under 932, that there should be no double taxation of income, that Virgin Islands sourced income gets paid to the Virgin Islands, non-Virgin Islands sourced income gets paid to the United States for non-bona fide residents. I see my time is up. Thank you. All right, thank you very much, counsel. Thank you to all of counsel. We're going to direct that a transcript be prepared, Trish, of these arguments. I think, as has been demonstrated, you've all heard some level of discomfort on the part of the panel with respect to the options here that are available to the taxpayers. We'll be taking this case under advisement. It is possible that you'll hear from us with respect to providing us with a supplemental memo after argument if we have any continuing questions. Thank you very much, counsel.